PER CURIAM.
¶1 Emery appeals a judgment of foreclosure entered following a court trial. Emery argues that the circuit court erred when it found that the endorsement on the note was valid, that the court erred in admitting certain testimony regarding ownership of the note, and that the court erred by not allowing Emery to call the attorney representing U.S. Bank as a witness at trial. We reject all three arguments and affirm.
Background
¶2 In 2004, Emery secured a mortgage loan from Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender. The note was then transferred multiple times, eventually ending up in the possession of U.S. Bank. In 2013, U.S. Bank filed a foreclosure action against Emery. U.S. Bank alleged that "true" copies of the note, mortgage, and loan modification were attached to the complaint. The copy of the note attached to the complaint did not have an endorsement.
¶3 In October 2014, U.S. Bank moved for summary judgment. The motion was supported by an affidavit of an employee of Nationstar Mortgage LLC, which served as the servicer of Emery's loan. An affidavit from another Nationstar employee in support of U.S. Bank's motion for summary judgment averred that Nationstar was in possession of the note on U.S. Bank's behalf and purported to attach a copy of the note, which again contained no endorsement.
¶4 The case was then stayed after Emery filed a bankruptcy petition. U.S. Bank renewed its motion for summary judgment in October 2016. The motion was supported by the affidavit of a Nationstar employee who averred that U.S. Bank, either directly or through its agent, had possession of the note, which was endorsed. The circuit court denied U.S. Bank's motion for summary judgment, primarily because of a factual dispute regarding which entity was the holder of the note.
¶5 A court trial was held beginning on August 9, 2017. U.S. Bank introduced in evidence what it alleged was the original note, which had on it a blank endorsement from Countrywide with a signature above the name "David A. Spector, Managing Director." U.S. Bank called as a witness Marisa Maldonado, an employee of Nationstar. Maldonado testified that Nationstar is a mortgage servicer and that Emery's loan is among the loans that Nationstar services. Maldonado testified about the mortgage, assignments of the mortgage, various correspondence sent to Emery, and the amount of indebtedness.
¶6 On cross-examination of Maldonado, Emery raised the issue of the endorsement and argued to the circuit court that the endorsement had been added only after Emery raised the endorsement issue and was done so at Nationstar, perhaps by a "confidential secret department." Maldonado testified that copies showing the note when it was not endorsed, like the copies attached to the complaint and to an affidavit supporting the motion for summary judgment, were contained in Nationstar's records. Maldonado did not have personal knowledge of when or by whom the endorsement was made on Emery's note.
¶7 The parties filed post-trial briefs. Emery argued that U.S. Bank failed to prove that it was in possession of the note because Maldonado, a Nationstar employee, did not identify the entity for which Nationstar serviced the loan. Emery also challenged the validity of the endorsement. The circuit court ruled orally on September 28, 2017, finding that Nationstar was in possession of the original note and that Nationstar had the right to enforce. The court also found that Emery failed to overcome the presumption of validity of the endorsement and that Emery defaulted on the loan. The court, however, did not enter judgment for U.S. Bank at that time because U.S. Bank had not proven that Nationstar serviced the loan on U.S. Bank's behalf.
¶8 Therefore, the circuit court reopened evidence to "allow U.S. Bank to make ... what [it] consider[ed] to be likely an undisputed link between U.S. Bank currently and Nationstar Mortgage," and limited the evidence to the issue of Nationstar's "status as agent/servicer" for U.S. Bank.
¶9 The trial resumed on December 7, 2017. U.S. Bank recalled Maldonado. Maldonado testified that she recognized an exhibit, that was received in evidence, as a limited power of attorney document that was part of Nationstar's business records. The limited power of attorney appointed Nationstar to act on behalf of U.S. Bank with respect to loans included in the trusts listed in schedule A attached to the limited power of attorney. Schedule A listed the GSR Mortgage Loan Trust 2005-AR2. Maldonado also testified that, according to her review of Nationstar's documents related to Emery's loan, Emery's loan had been transferred to the GSR Mortgage Loan Trust 2005-AR2.
¶10 The circuit court found that U.S. Bank met its burden to demonstrate that it held the note endorsed in blank, and that U.S. Bank therefore had the authority to enforce the note and was entitled to judgment. The court entered judgment in favor of U.S. Bank. This appeal follows.
Discussion
A. The Validity of the Note
¶11 Emery first argues that the circuit court erroneously found that the endorsement on the note was "authentic, made with authority, and valid." In reviewing this argument, we "defer to the circuit court's findings of fact unless they are 'clearly erroneous' " and we apply de novo review to the application of law to facts. See Phelps v. Physicians Ins. Co. of Wis. , 2005 WI 85, ¶100, 282 Wis. 2d 69, 698 N.W.2d 643.
¶12 Emery's supporting arguments are difficult to follow. So far as we can tell, Emery does not dispute the circuit court's finding that the note produced at trial is the original note. Rather, Emery seems to argue that he proved that the endorsement-in-blank on the note must have been forged after the note was in Nationstar's possession. We are not persuaded.
¶13 "[I]n order to prevail on a foreclosure claim, a mortgagee must first prove it has the right to enforce the note." Dow Family, LLC v. PHH Mortg. Corp. , 2013 WI App 114, ¶15, 350 Wis. 2d 411, 838 N.W.2d 119 (citing PNC Bank, N.A. v. Bierbrauer , 2013 WI App 11, ¶10, 346 Wis. 2d 1, 827 N.W.2d 124 (2012) ), aff'd, 2014 WI 56, 354 Wis. 2d 796, 848 N.W.2d 728. If an instrument is endorsed in blank, it is payable to the bearer and may be negotiated by simple transfer of possession. Id. , ¶16 (citing WIS. STAT. § 403.205(2) ).
¶14 Here, on its face, the endorsement is a Countrywide endorsement signed by a Countrywide employee, and Emery concedes that the presumption of validity found in WIS. STAT. § 403.308(1) applies to the endorsement.[1] Emery, however, contends that he overcame the presumption of the endorsement's validity. We first address his reliance on Dow Family , and then address his evidentiary argument.
¶15 Emery cites Dow Family for the proposition that a plaintiff's "failure to attach an endorsed copy of the note to its complaint calls into question the authenticity of the endorsed copy ... ultimately produced." See Dow Family , 350 Wis. 2d 411, ¶23 (emphasis added). Emery argues that this statement applies here because U.S. Bank, in the course of this litigation, submitted copies of the note that did not show an endorsement. The situation here, however, is not analogous to the facts in Dow Family . In that case, the plaintiff did not produce the original note at any point during the circuit court proceedings. The only evidence that the plaintiff was in possession of the original note, endorsed in blank, was a copy subsequently produced. See id. Here, U.S. Bank did not later submit a copy; U.S. Bank presented an original note.
¶16 Apart from Dow Family , Emery argues that there is undisputed evidence that the endorsement was placed on the note after it was transferred to Nationstar and, therefore, undisputed evidence that the endorsement was fraudulent. This argument is based both on the copies of the note with no endorsement and on Maldonado's testimony stating that she did not know when the endorsement stamp was placed on the note, that "an endorsement [is] only placed once a transfer has taken place," and that the endorsement and signature were made with one stamp. We address and reject each component of this argument.
¶17 First, it was reasonable for the circuit court to attach no significance to the existence of copies of the note that do not show an endorsement. Apart from the simple common-sense notion that copies might have been made at Countrywide before the note was endorsed, and therefore that such copies or copies of such copies might exist in a successor's files, here Maldonado also testified that it was common to have copies of an original note before the endorsement was applied and that a servicer like Nationstar acquires whatever a prior servicer has in their records.
¶18 Second, Maldonado's testimony that she did not know when the endorsement was put on the note has no weight. She works for Nationstar, and the note does not purport to have been endorsed by Nationstar.
¶19 Third, it is true that Maldonado stated in passing that "an endorsement [is] only placed once a transfer has taken place." But reading this statement in context shows that there is no reason to suppose that Maldonado meant that endorsements are always or routinely placed on a note after such notes are transferred. Maldonado's statement was made in the context of questions about the presence of multiple images of notes in Nationstar's system. Notably, Emery's attorney did not follow up to clarify what Maldonado meant, and we find no indication that Emery argued to the circuit court that this was an admission by Maldonado that Nationstar or anyone else places endorsements on notes after they are transferred. Our reading is that Maldonado meant that it was common to have copies of notes that do not show an endorsement because endorsements are placed on notes at the time they are transferred. It is readily apparent to us, because of the absence of follow up, that this is how the statement was understood at the time it was made.
¶20 What remains is Emery's reliance on Maldonado's agreement with Emery's trial counsel that the endorsement and signature appear to have been made with a single stamp, which we understand to mean that the stamp has on it a replica of a signature. However, nothing about this agreement by Maldonado speaks to when the endorsement was stamped on the note.
¶21 Accordingly, Emery is not only wrong that there is undisputed evidence that the endorsement was placed on the note after the note was transferred to Nationstar, Emery is wrong that the circumstances and testimony overcome the presumption of validity.
B. The Admission of "Official Position" Testimony
¶22 Next, Emery argues that the circuit court erred when it allowed U.S. Bank's witness to testify regarding Nationstar's "official position" on the ownership of the note. U.S. Bank responds by asserting that it otherwise made a prima facie case for foreclosure. We agree with U.S. Bank that, regardless of the challenged testimony, U.S. Bank proved that it had the right to enforce the note. Thus, we need not consider whether it was error to admit the challenged testimony.
¶23 U.S. Bank introduced the following evidence: (1) the original note; (2) an assignment of mortgage transferring Emery's mortgage to U.S. Bank as trustee for the holders of the GSR Mortgage Loan Trust 2005-AR2; and (3) a limited power of attorney appointing Nationstar as the servicer for the mortgages in 660 trusts, including GSR Mortgage Loan Trust 2005-AR2. Emery contends that this evidence is insufficient, but he cites no case law supporting his contention that something more was needed to prove that Nationstar was acting on behalf of U.S. Bank, as trustee of the GSR Mortgage Loan Trust 2005-AR2.
C. The Exclusion of U.S. Bank's Attorney as a Witness
¶24 Last, Emery argues that the circuit court misused its discretion by not allowing Emery to call as a witness at trial the attorney who represented U.S. Bank in this action. Emery contends that he should have been permitted to call U.S. Bank's counsel as a witness because (1) the court relied on the attorney's possession of the original note as evidence that U.S. Bank was in possession of the original note; (2) there was testimony that there was no attorney-client relationship with U.S. Bank; and (3) there was no other evidence of an attorney-client relationship between the attorney and U.S. Bank. We disagree. The circuit court did not erroneously exercise its discretion.
¶25 Appellate courts review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard. Martindale v. Ripp , 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. " 'A circuit court has broad discretion in determining the relevance and admissibility of proffered evidence.' " State v. Oberlander , 149 Wis. 2d 132, 140, 438 N.W.2d 580 (1989) (quoted source omitted).
¶26 Here, the circuit court properly excluded testimony that would have been irrelevant to the merits of the foreclosure action. Despite Emery's arguments regarding Nationstar's actions, Emery fails to explain how calling U.S. Bank's attorney as a witness would have any bearing on the resolution of the foreclosure action that was before the circuit court. As we have explained, the evidence showed that Nationstar acted on behalf of U.S. Bank in servicing the note and in the foreclosure action.
Conclusion
¶27 For the foregoing reasons, the judgment of foreclosure is affirmed.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version.